FILED
2016 Aug-31  AM 08:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **FERLIN ETHRIDGE,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ]          **5:14-cv-02126-KOB** |
| **NICHOLS ALUMINUM - ALABAMA,** | ] |
| **LLC, A DIVISION OF ALERIS,** | ] |
| **INTERNATIONAL, INC.,** | ] |
| | ] |
| **Defendant.** | ] |

<u>**MEMORANDUM OPINION**</u>

This matter is before the court on Defendant Nichols Aluminum's "Motion for Summary Judgment." (Doc. 22).

The sole remaining claim in this action is Plaintiff Ferlin Ethridge's[1] claim that he was terminated in retaliation for exercising his FMLA rights. As set out in this Opinion, the court finds that, as to this claim, no genuine issues of material fact exist and that Nichols Aluminum is entitled to judgment as a matter of law. Therefore, the court will GRANT Defendant Nichols Aluminum's Motion for Summary Judgment.

**I.      Legal Standard**

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed.

---

[1] The Plaintiff's last name is spelled "Ethridge" in the Complaint and in the majority of the filings and Orders in this case. In the Motion for Summary Judgment and the Response in Opposition, the Plaintiff's last name is spelled "Etheredge" and "Etheridge." The court believes that the correct spelling is "Etheredge" because this is the spelling used in the Plaintiff's medical records; however, to be consistent with the other filings and Orders in this case, the court continues to refer to the Plaintiff as Ferlin Ethridge.

R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56©.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden shifts to the non-moving party to produce sufficient favorable evidence "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

In ruling on a motion for summary judgment, the court should view all evidence and inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The evidence of the non-moving party "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks and citations omitted). This standard exists because "the drawing of legitimate inferences from the facts are jury functions,

not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson*, 477 U.S. at 255).

After both parties have addressed the motion for summary judgment, the court must grant the motion only if no genuine issues of material fact exist and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## II.    Procedural History

Plaintiff Ferlin Ethridge filed this suit against Defendant Nichols Aluminum in October 2014. The case was originally assigned to Senior Judge Inge P. Johnson. Ethridge asserted claims for FMLA Interference, FMLA Retaliation, and Retaliation under the Alabama Worker's Compensation Act. In February 2015, Ethridge moved to voluntarily dismiss his Worker's Compensation claim, and Judge Johnson dismissed that claim with prejudice. In April 2015, Ethridge moved to voluntarily dismiss his FMLA interference claim, and Judge Johnson also dismissed that claim with prejudice, leaving Ethridge's FMLA retaliation claim as the only claim remaining in this suit.

In June 2015, the case was reassigned to the undersigned. Shortly thereafter, on August 31, 2015, Defendant Nichols Aluminum moved for summary judgment on Ethridge's sole remaining claim, his FMLA retaliation claim. That Motion for Summary Judgment has been fully briefed.

## III.    Statement of Facts

Ethridge began working for Nichols Aluminum's predecessor, Decatur Aluminum, in 1983. He continued working for Nichols Aluminum when Nichols bought Decatur Aluminum in 1994. Ethridge started out as an operator on the paint line at Nichols, and beginning in 1997, worked as a team leader on the paint line.

3

As a team leader, Ethridge was occasionally required to fill in for missing employees. All of the paint line employees, including the team leader, were sometimes required to lift heavy sheet metal above their heads and to carry aluminum rolls weighing in excess of 30 pounds. All paint line employees, including team leaders, worked 12 hour shifts.

On August 15, 2011, while working, Ethridge suffered an injury to his right shoulder. Ethridge's physician put him on "light duty" restrictions, which included a restriction on his ability to lift. Ethridge continued to work on "light duty" restrictions until January 2012. During that time, he was not performing all of the duties of team leader because of his inability to lift.

On January 20, 2012, Ethridge had surgery to repair his torn rotator cuff. Following his surgery, Ethridge did not return to work. Ethridge attempted to rehabilitate his shoulder after the surgery, but the rehabilitation was largely unsuccessful.

On August 31, 2012, Ethridge underwent a Functional Capacity Evaluation ("FCE"). The results of the FCE indicated that Ethridge was able to work at the light physical demand level, with the following maximum lifting capacities: "floor to knuckle lift" - 30 pounds infrequent/maximum, 15 pounds occasional; "knuckle to shoulder lift" - 10 pounds infrequent/maximum, 5 pounds occasional; and "shoulder to overhead lift" - unable. The FCE also stated that Ethridge's maximum shift length was 8 hours.

On September 11, 2012, Ethridge's physician notified Nichols of these restrictions, stating Ethridge's restrictions were "per FCE." Ethridge's physician also stated that Ethridge's injuries were permanent and that Ethridge was at "maximum medical improvement."

That same month, Ethridge spoke to Beverly Thompson, the Human Resources Manager at Nichols, over the phone about returning to work. Ethridge asked Thompson if he could return to work as a team leader, but said he would need to do so consistent with the restrictions in his

FCE. Thompson told Ethridge to bid on an open lab position.

Nichols Aluminum contends that it created a lab position for Ethridge that would accommodate his restrictions. Thompson stated in her affidavit that this lab position would allow Ethridge to work eight-hour shifts and would not require any heavy lifting. Thompson stated that, because of Nichols's collective bargaining agreement with the local steelworkers' union, Ethridge would have to submit a bid for the position. However, Thompson understood the bidding requirement to be a formality, and stated that she believed that Ethridge would assuredly receive the job.

In his deposition, Ethridge agreed that he had helped to negotiate the collective bargaining agreement with Nichols as part of his duties as a union representative. Ethridge also acknowledged that employees were required to bid on jobs to fulfill union requirements, and that he understood that the union requirements were the reason he had to bid on the job.

Ethridge testified that, when he spoke to Thompson, she did not discuss his restrictions or explain that the lab position had been modified to accommodate his restrictions. Ethridge stated that he did not want to bid on the lab job because he knew that the lab employees had to lift drums weighing 320 pounds, and he could not do the job. Ethridge, however, was aware of one other employee, Lonnie Boston, who Nichols had accommodated with a position in the lab. Ethridge also testified that, even if he had known the lab position fit his lifting restrictions, he would not have bid on the job "[b]ecause they were supposed to sit down, and we was [sic] supposed to work a job out." (Doc. 23-1, 127:11-13).

When Ethridge did not bid on the lab position, Nichols terminated his employment, effective as of November 1, 2012. Ethridge contends that Nichols terminated him because Beverly Thompson did not like to deal with his FMLA leave and was trying to get back at him.

When asked at his deposition what gave him that impression, Ethridge testified that it was "[j]ust the way she spoke to me over the phone" and the fact that Thompson "offered me to come up and bid on a job instead of letting me come up and sit down and talk with them." (Doc. 23-1, 102:7-103:3).

During the time that Ethridge was out of work following his injury, he received $23,176.80 in workers' compensation benefits. In January 2013, Nichols entered into a settlement agreement with Ethridge in which it paid Ethridge $38,500.00. As part of the settlement agreement, Ethridge released Nichols "from any and every claim, demand and cause of action whatsoever which [he had], or may hereafter have against [Nichols] arising from and related to the incident of August 15, 2011." (Doc. 23-2, at 84, ¶ 7). Ethridge was represented by counsel in negotiating the agreement, and the state court reviewed and approved the agreement.

On December 17, 2012, Ethridge filed a discrimination charge with the EEOC. In his EEOC charge, Ethridge alleged that he was discriminated against because of his age (58 years old). Ethridge did not mention the FMLA or FMLA retaliation in his EEOC charge. The EEOC found no merit to Ethridge's allegations and dismissed the charge.

Ethridge is currently receiving disability benefits from the Social Security Administration. The SSA determined that Ethridge was permanently and totally disabled as of January 20, 2012, the date of his surgery, and was entitled to benefits beginning July 2012. Ethridge has been receiving benefits for total disability since November 2013.

**IV.   Discussion**

Defendant Nichols argues that it is entitled to summary judgment for two reasons. First, it contends that it had a valid, nondiscriminatory reason for terminating Ethridge, and that Ethridge cannot show that this reason was pretextual. Second, Nichols contends that Ethridge released all

6

of his claims against Nichols, including his current FMLA retaliation claim, in the 2013

settlement agreement between Nichols and Ethridge.

The court agrees with Nichols that Ethridge has failed to show that Nichols's decision was

pretextual. Because the court finds merit in Nichols's first argument, it does not address whether

Ethridge released his FMLA claim against Nichols in the 2013 workers' compensation settlement

agreement.

To prevail on his FMLA retaliation claim, Ethridge "must demonstrate that his employer

intentionally discriminated against him in the form of an adverse employment action for having

exercised an FMLA right." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239

F.3d 1199, 1207 (11th Cir. 2001) (citing *King v. Preferred Technical Group*, 166 F.3d 887, 891

(7th Cir. 1999)). In other words, Ethridge must show that Nichols Aluminum's actions "were

motivated by an impermissible retaliatory or discriminatory animus." *Id.*

Where, as here, direct evidence of retaliatory intent does not exist, the court applies the

burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See

Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). Applying the

*McDonnell Douglas* framework, Ethridge "must first establish a prima facie case by

demonstrating (1) [he] engaged in statutorily protected activity, (2) [he] suffered an adverse

employment decision, and (3) the decision was causally related to the protected activity." *Id.*

Ethridge and Nichols agree that Ethridge has satisfied the first two elements of his *prima

facie* case. Ethridge engaged in protected activity when he took FMLA leave. Ethridge suffered

an adverse employment action when he was terminated by Nichols Aluminum. Nichols,

however, contends that Ethridge cannot satisfy the third element of his *prima facie* case and

show that Nichols's decision to terminate Ethridge was causally related to his protected activity.

7

The Eleventh Circuit has held that "close temporal proximity between [FMLA leave and termination] is more than sufficient to create a genuine issue of material fact of causal connection." *Martin v. Brevard Cnty. Public Schools*, 543 F.3d 1261, 1268 (11th Cir. 2008) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)). Ethridge's termination became effective on November 1, 2012. Nichols argues that his FMLA leave was not in close temporal proximity to his termination because Ethridge had long since exhausted his twelve weeks of FMLA leave following his August 15, 2011 injury or January 20, 2012 surgery. Ethridge, however, took Workers' Compensation *and* FMLA leave. He was terminated immediately after his Workers' Compensation leave ended and he attempted to come back to work. Viewing the facts in the light most favorable to Ethridge, the court finds that the timing of Ethridge's request to return to work is close enough in temporal proximity to establish a causal connection between his FMLA leave and his termination. Accordingly, the court finds that, for purposes of summary judgment, Ethridge has established his *prima facie* case of FMLA retaliation.

Now that the court finds that Ethridge has established a *prima facie* case of retaliation, the burden shifts to Nichols to show that it had "a legitimate, nondiscriminatory reason" for terminating Ethridge. *See Schaaf*, 602 F.3d at 1243. If Nichols demonstrates that it had a legitimate, nondiscriminatory reason for its actions, the burden then shifts back to Ethridge to demonstrate that Nichols's reasons were "merely a pretext for discrimination." *Id.* at 1244. To show that Nichols's reasons were pretextual, Ethridge must present evidence "'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Schaaf*, 602 F.3d at 1243 (quoting *McDonnell Douglas*).

8

Nichols has articulated a legitimate, nondiscriminatory reason for terminating Ethridge. Nichols contends that it terminated Ethridge because, as demonstrated by the restrictions in his FCE, Ethridge could not perform the functions of the team leader position, and Ethridge refused to bid on the lab position. In his Response in Opposition to Nichols's Motion for Summary Judgment, Ethridge does not argue that Nichols's given reason is illegitimate or discriminatory. Ethridge does not, for example, argue that, contrary to Nichols's assertions, he could perform the functions of team leader.

Rather, Ethridge argues that Nichols's reasons were merely a pretext for discrimination against him because he had exercised his FMLA rights. Ethridge offers several ways in which he contends the court can find pretext in Nichols's decision to terminate him. The court, however, finds that none of the evidence offered by Ethridge is "sufficient to permit a reasonable factfinder to conclude" that Nichols's reasons for terminating Ethridge were pretextual. *Schaaf*, 602 F.3d at 1243.

In his deposition, Ethridge testified that he believed he was terminated because of "Beverly Thompson and the FMLA." (Doc. 23-1, 102:7-8). Ethridge further explained that "[w]ith me being off, she had to deal with all this Family Medical Leave, and I feel like she was just trying to get back at me." (*Id.* at 102:11-14). When further questioned about what gave him that impression, Ethridge stated that it was "[j]ust the way she spoke to me over the phone" and that she "offered me to come up and bid on a job instead of letting me come up and sit down and talk with them." (*Id.* at 102:18-103:3).

Ethridge's conclusory allegations based on his subjective beliefs are insufficient to show that Nichols's reason for terminating him was a pretext for discrimination. *See, e.g.*, *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) ("To survive summary judgment,

the plaintiff must then present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice.") (citations omitted). Ethridge has failed to meet this standard.

Ethridge also suggests that Beverly Thompson's failure to tell him that the lab job had been restructured to fit his restrictions shows pretext. A dispute of fact exists as to whether Beverly Thompson told him that the lab position had been modified to accommodate his FCE restrictions. However, the court finds that this disputed fact is immaterial. In his deposition, Ethridge testified that, even if he had known that the lab position had been modified to fit his restrictions, he would not have bid on it because he expected management at Nichols Aluminum to sit down and have a discussion with him first. Thus, Ethridge's own testimony demonstrates that, even if Thompson had told Ethridge that the lab position had been restructured, Ethridge would not have bid on the position. When Ethridge failed to bid on the job, Nichols Aluminum would have found itself in the exact same place as it did when it chose to terminate Ethridge in 2012.

Further, even taking Ethridge's assertion that Thompson did not tell him about the modified physical requirements of the lab job as true, the court fails to see how this omission shows pretext. Ethridge has failed to in any way connect Thompson's failure to discuss the lab restrictions with an intent to retaliate against Ethridge for exercising his FMLA rights. Again, Ethridge's conclusory allegation that Thompson failed to tell him about the modifications because she wanted to terminate him for taking FMLA leave is insufficient to show pretext. *See, e.g., Chapman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (When the employer has stated a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ."); *see also Gilliard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 865 (11th

Cir. 2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("'[A] reason cannot be proved to be a "pretext *for discrimination*" unless it is shown both that the reason was false, and that discrimination was the real reason."').

The court is likewise unable to find pretext in Thompson's insistence that Ethridge bid on the lab job before Nichols offered it to him. In his deposition, Ethridge agreed that he had helped to negotiate the collective bargaining agreement with Nichols as part of his duties as a union representative. Ethridge also acknowledged that employees were required to bid on jobs to fulfill union requirements, and that he understood the reason he had to bid on the job. Given the fact that bidding was required per Nichols's collective bargaining agreement with the local steelworkers' union, the court is unable to find any support for Ethridge's suggestion that the bidding requirement was a pretext for discrimination.

Ethridge additionally argues that the court can find evidence of Nichols's pretext in its inconsistent application of policies and procedures. Ethridge cites case law that provides that "[a]n employer's failure to follow its own internal employment procedures can constitute evidence of pretext." *Hurlbert*, 439 F.3d 1286 (11th Cir. 2006) (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 727 (7th Cir. 2005)); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998) (explaining that allegations that "established rules were bent or broken to give a non-minority applicant an edge in the hiring process" can be relevant to the issue of pretext).

In the cases cited by Ethridge, the employer had a hiring policy or criterion it allegedly used for selecting employees, but the employer only selectively applied that policy so as to benefit non-minority applicants. The Eleventh Circuit has found that, in these situations, the inconsistent application of the employer's policies could show that the employer's reasons were a

pretext for discrimination. For example, in *Carter v. Three Springs Residential Treatment*, the plaintiff presented evidence that his employer had a policy of posting job vacancies, but did not always do so, especially with respect to non-minority applicants. The Eleventh Circuit explained that a failure to follow this policy could provide circumstantial evidence of discrimination, elaborating that "it is even more suspicious where it is alleged that established rules were bent or broken to give a non-minority applicant an edge in the hiring process." 132 F.3d at 644.

In the instant case, Ethridge argues that "it was defendant's policy or procedure to allow workers to return to work where they do not meet all of the requirements of a job description." (Doc. 25, at 19). Although Ethridge does not set this argument out in his Response, the court assumes that Ethridge intends to argue that the court can find pretext in Nichols's decision to terminate Ethridge because Nichols did not follow its "policy"of allowing workers to return to work when they failed to meet the requirements of a job description.

In support of this contention that Nichols had such a policy or procedure, Ethridge offers declarations made by himself and another former Nichols employee, Scotty Fike. In these declarations, Ethridge and Fike discuss other Nichols Aluminum employees who were hired for positions or allowed to return to work despite being unqualified for the job as set out in the job description. For example, Fike discusses an employee named Darlene Hughes who allegedly did not know how to operate any machines in the mill department, but was hired as team leader in the mill department. Ethridge discusses an employee named Lonnie Boston who was allowed to work an 8-hour shift in the lab despite the position's normal 12-hour shift requirements. Ethridge also mentions an employee named Barry Winn, who was allegedly off of work for at least four months with a heart condition, but was then allowed to come back to his old job as a team leader; an employee who allegedly got his hand caught in a roll and was out for six months and then

12

allowed to come back to work while his hand healed and he obtained a prosthetic replacement; and an employee named Pearsall Sanders who was allegedly off of work for six months with a medical condition, but returned as a team leader.

The court finds that the situations cited by Ethridge do not show that Nichols had a policy of allowing workers to return to work when they did not meet all of the requirements of a job description. The fact that Nichols acted in a particular manner on a few occasions does not demonstrate that it had a policy of doing so.

Further, even if Nichols had such a "policy," Ethridge has failed to demonstrate how Nichols's application of this policy shows pretext. For the policy to provide evidence of pretext, Ethridge would have to show that Nichols applied it inconsistently so as to treat employees *who did not take FMLA leave* more favorably. Ethridge has presented no evidence of such differential treatment. Ethridge does not indicate in his evidentiary submissions whether the employees he discusses took FMLA leave; however, the court can make the reasonable inference that some if not all of the employees Ethridge discusses likely took FMLA leave. Any difference in treatment between Ethridge, who took FMLA leave, and other employees, who engaged in the same protected activity, would not show pretext. Accordingly, the court finds no merit in Ethridge's suggestion that Nichols's alleged "policy" demonstrates that its given reasons for terminating Ethridge were pretextual.

For the reasons stated in this Opinion, the court finds that none of the pieces of evidence to which Ethridge has pointed are "sufficient to permit a reasonable factfinder to conclude that the reasons given by [Nichols] were not the real reasons for the adverse employment decision.'" *Schaaf*, 602 F.3d at 1243. Even in viewing all of the evidence and inferences drawn from the

13

underlying facts in the light most favorable to Ethridge, the court finds that Ethridge has not produced sufficient favorable evidence "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608 (11th Cir. 1991).

**V.      Conclusion**

Thus, because Ethridge has not shown that a genuine issue of material fact exists as to whether Nichols's reasons for terminating him were pretextual, the court will **GRANT** Defendant Nichols Aluminum's Motion for Summary Judgment.

The court will enter a separate Order along with this Opinion.

**DONE** and **ORDERED** this 31st day of August, 2016.


_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

14